**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case Number:_____-CV-_____

ANDRES GOMEZ,

      **Plaintiff**

V.

COMPLETE CHOICE INSURANCE,

      **Defendant**

_____/

**COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

ANDRES GOMEZ ("Plaintiff Gomez" or "Plaintiff"), seeks a permanent injunction requiring a change in COMPLETE CHOICE INSURANCE, ("Defendant" or the "Company") corporate polices to cause Defendant's website to become, and remain, accessible and in support thereof asserts as follows:

**INTRODUCTION**

1.      Plaintiff brings this action against Defendant and asserts that its website is not accessible to blind and visually impaired consumers in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") and Section 504 of the Federal Rehabilitation Act. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies related to its web-based technologies so that Defendant's website will become, and will remain, accessible. The website at issue is www.completechoiceinsurance.com (the "Website").

2.      While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.  As

1

detailed below, Defendant's Website is once such instance.

3.     Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content.

4.     Websites must be designed and maintained so screen reading software and other assistive technologies can be integrated into and utilized by disabled individuals.

5.     Defendant's Website contains digital barriers which limit the ability of blind and visually impaired consumers to access the Website via screen reader software, thus discriminating against disabled individuals with visual impairments, like Plaintiff.

6.     Plaintiff has patronized Defendant's Website in the past, and intends to continue to patronize Defendant's Website. However, unless Defendant is required to eliminate the access barriers at issue, and required to change its policies so that access barriers do not reoccur on Defendant's Website, Plaintiff will continue to be denied full access to the Website as described, and will be deterred from fully using Defendant's Website and brick and mortar facilities.

7.     Furthermore, adherence to an ongoing policy of maintaining accessibility for visually impaired users of Defendant's Website is necessary because websites are typically upgraded and revised on a regular basis.  If a continuing policy of maintaining accessibility for visually impaired individuals is not regularly enforced, it is likely Defendant's Website will revert back to the inaccessible format which discriminated against Plaintiff and others with visual disabilities.

8.     Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

a)     Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist Defendant in improving the accessibility of the Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

b)     Defendant works with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c)     Defendant work with the Mutually Agreed Upon Consultant to perform an automated

accessibility audit on a periodic basis to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

d)    Defendant works with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendants' Website continues to comply with WCAG 2.0 AA on an ongoing basis; and

e)    Defendant works with the Mutually Agreed Upon Consultant to evaluate whether the inaccessible website has been rendered accessible, and whether corporate policies related to web- based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

9.    This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 for Plaintiff's claims arising under 42 U.S.C. § 12188.

10.    Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

11.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

12.    Plaintiff Gomez and, at all times relevant hereto, has been a resident of the State of Florida. Plaintiff Gomez is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

13.    Plaintiff is disabled as defined by the ADA as he is substantially limited in performing one or more major life activities in that he is limited in using his eyes for accurate sight.  As such,

Plaintiff is not able to readily utilize the information visually communicated by the Website and utilize any interactive applications on the Website without the use of appropriate screen reader software.

14.     Plaintiff uses the term "legally blind" or "blind" to refer to persons with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.  Some people who meet this definition have limited vision, whereas others have no vision.

15.     Plaintiff is legally blind.

16.     Defendant is a for profit company doing significant business in this judicial district. Defendant has physical brick and mortar locations in this judicial district.

17.     Defendant owns, operates and maintains brick and mortar locations in the State of Florida and specifically at 13710 W STATE ROAD 84 Davie, FL 33325 which Plaintiff has attempted to frequent, and would successfully do so, if not for the digital barriers that impede his access to the location.

18.     Defendant's physical locations offer goods and services to the public. Defendant also offers goods and services to the public through the Website. Defendant's brick and mortar locations and website are integrated and are public accommodations pursuant to 42 U.S.C. § 12181(7).

## FACTUAL BACKGROUND AND ALLEGATIONS

19.     The Internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, etc. for both sighted and blind and visually-impaired persons, as well as individuals with other perceptual or motor disabilities.

20.     Blind individuals may access websites by using keyboards in conjunction with screen reader software that converts text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet.

21.     Unless websites are designed to be read by screen reader software, blind individuals are unable to fully access websites and the information, products and services available through the website.

22.     The international website standards organization, W3C, has published WCAG 2.0 AA. WCAG 2.0 AA provides widely accepted guidelines for making websites accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and numerous federal courts as essential for achieving accessibility for individuals with disabilities.

23.     Defendant's Website offers a description of services, promotions and other relevant information at the physical establishment and the option to schedule an appointment with a plan specialist using information gathered from the website.

24.      Defendant's Website also helps users locate physical establishments, view services offered including but not limited to, information on available insurance policies, which Plaintiff is entitled to access, enter e-mail and contact information for communication and perform a variety of other essential functions.

25.      Plaintiff is legally blind and requires use of the screen reader software in order to access the Internet, read website content and interact with Defendant's Website.

26.     There is a physical nexus between Defendant's Website and physical locations operated by Defendant in that the Website provides contact information, operating hours and access to services found at the physical establishment.

27.      Despite several attempts to use and navigate the Website, Plaintiff has been denied the full use and enjoyment of the physical locations, goods and services available on the Website as a result of access barriers on the site. As a result of Defendant's access barriers, Plaintiff has been denied information that would allow him to access a physical brick and mortar location.

28.      Defendant's Website is fully accessible to individuals without visual disabilities, and is not accessible to individuals, like Plaintiff, with visual disabilities.

29.      The barriers at the Website have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff from attempting to use Defendant's website although Plaintiff intends to use the website in the future once it becomes accessible.

30.      The access barriers at the Website that Plaintiff has encountered include but are not limited to, the following:

   a)   Text equivalent for every non-text element is not provided;

   b)   Information about the meaning and structure of the Website's content is not conveyed by more than the visual presentation of content;

   c)   When the sequence in which content is presented affects its meaning, a correct reading sequence cannot be programmatically determined;

   d)   Web pages do not have titles that describe topic or purpose;

   e)   Images on the website are not explained to the user with use of a screen reader program;

31.      If the Website were accessible, Plaintiff could independently shop for and research services via Defendant's Website like non-disabled individuals currently can, but because of Plaintiff's disability, Plaintiff cannot.

32.      Upon information and belief, Defendant has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by blind people.

33.      If Defendant had an intention to make its Website fully accessible to, and independently usable by blind people, it failed to adequately implement and execute a policy which provides website accessibility to visually impaired and disabled individuals.

34.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to modify its website to correct the discriminatory conditions as set forth herein.

35.     The relief requested serves the public interest and the benefit to Plaintiff and the public far outweigh any detriment to Defendant.

36.     Without injunctive relief, Plaintiff and other blind individuals will continue to be unable to independently use the Website in violation of their rights under the ADA.

37.     Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay the undersigned counsel reasonable attorney's fees, costs, and expenses from Defendant pursuant to 42 U.S.C. § § 12205 and 12117, and Plaintiff is entitled to attorney's fees, costs, and expenses from Defendant.

### SUBSTANTIVE VIOLATION  Title III of the ADA, 42 U.S.C. § 12181 *et seq.*

38.     The allegations contained in the previous paragraphs are incorporated by reference.

39.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

40.     Defendant's physical locations and integrated Website are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

41.     There is a physical nexus between Defendant's Website and physical locations in that the Website provides contact information, operating hours, access to services found at the physical establishment and the address to the physical locations.

7

42.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

43.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. §12182(b)(1)(A)(ii).

44.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); *see also* 28 C.F.R. § 36.303(a).

45.     Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1).

46.     The regulation sets forth numerous examples of "auxiliary aids and services," including "...accessible electronic and information technology; or other effective methods of making visually

delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

47.      The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is legally blind and has disabilities that substantially limit the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), has been denied full and equal access to Defendant's Website because of his disability.

48.      Plaintiff has not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled persons. Plaintiff has also been denied access to products that are available to non-disabled patrons of Defendant.

49.      Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

50.      Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

a.      A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA and Section 504 of the Federal Rehabilitation Act as described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Websites are fully accessible to, and independently usable by, blind individuals;

b.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.501 (b) which directs Defendant to take all steps necessary to bring the Website into full compliance with the requirements set forth in the ADA, and  implementing regulations, so that the Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in Paragraph 6 above;

c.      Payment of litigation expenses and costs;

d.    Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and,

e.    The provision of whatever other relief the Court deems just, equitable and appropriate.

Respectfully Submitted,

*/s/ Alberto R. Leal*

Alberto R. Leal

Florida Bar No.: 1002345
The Leal Law Firm, P.A.
8927 Hypoluxo Rd. #157
Lake Worth, FL 33463
Phone:561-237-2740
Facsimile: 561-237-2741
E-Mail:al@thelealfirm.com
**ATTORNEY FOR PLAINTIFF**